| | | |
|---|---|---|
| JAIME VARGAS | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 8850 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| VIEJA AZTECA BAKERY, INC. and | ) | |
| ALFREDO SANCHEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In November 2014, Jaime Vargas filed a complaint against Vieja Azteca Bakery, Inc. and its owner, Alfredo Sanchez, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA) and the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.* (IMWL). R. 1, Compl.[1] According to Vargas, he was never paid overtime during the two years that he worked there, despite consistently working more than 40 hours each week. Neither Azteca nor Sanchez answered the Complaint, so the Court entered a default judgment against them in March 2015. R. 16, Default Judgment.[2] Around three years later, Vargas filed a citation to discover Azteca's assets. R. 20, Citation. In response to the citation, Azteca finally entered an appearance in the case and moved to vacate the judgment and quash the citation. R. 22, Mot. to Quash. For the reasons discussed below, the motion is denied. Azteca has

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

[2]The Court has subject matter jurisdiction over Vargas's FLSA claim under 28 U.S.C. § 1331 and the accompanying state claim under 28 U.S.C. § 1367(a).

failed to show that service of summons was improper; provides no good cause for its failure to respond to the Complaint; did not act quickly to rectify the default; and does not have a meritorious defense to the claims.

## I. Background

Jaime Vargas, who usually goes by his middle name, Gerardo, R. 34, Pl. Sur-Reply, Exh. 1, Vargas Aff. ¶ 4, worked at Vieja Azteca Bakery from September 2011 to September 2013, R. 33, Def. Reply, Exh. A, Sanchez Dec. ¶ 4. Vargas alleged that, during those two years, he consistently worked 72 to 84 hours per week but was never paid overtime. *See* R. 13, Mot. for Default Judgment, Exh. B, Calculation of Overtime Hours. After Vargas filed this lawsuit and submitted returns of service of the summons, Compl., R. 8, 9, neither Azteca nor Sanchez ever responded to the Complaint. On Vargas's motion, the Court entered a default judgment awarding him $47,139.81 in damages and $3,834.00 in attorneys' fees, for a total of $50,973.81. R. 13, Mot. for Default Judgment ¶¶ 6-7; R. 16, Default Judgment. Around three years later, in April 2018, Vargas filed a citation to discover Azteca's assets so that he could collect on the default judgment. *See* Citation. In response, Azteca moved to quash the citation and, essentially, to vacate the default judgment, contending that this was the first it had ever heard of the lawsuit. Mot. to Quash.

## II. Analysis

### A. Procedural Background

As an initial matter, Azteca's[3] opening motion to quash was a procedural mystery, because it cited no Federal Rule of Civil Procedure and no case law. R. 22, Motion to Quash. Instead, the motion asserted that Azteca had previously settled overtime claims with Vargas via a settlement with the United States Department of Labor. Mot. to Quash at 1. Really, then, Azteca was arguing to vacate the default judgment. Yet Azteca's six-sentence motion made no attempt to set forth any procedural basis to vacate, let alone the showing required for vacatur of a default judgment. Indeed, in light of the absence of any developed argument, the Court would likely have been within its discretion to deny the motion outright. But because the motion asserted a potentially compelling argument—that Azteca had already paid Vargas what was due under a settlement agreement—the Court called for a response from Vargas. In any event, the Court will analyze the motion as if it were properly filed motion to vacate the default judgment.

### B. Service of Process

Azteca presents two arguments in an effort to vacate the default judgment. First, Azteca argues that it was improperly served—or never served at all.—in which case the Court did not have personal jurisdiction over it. Def. Reply at 7-8. "Under Federal Rule of Civil Procedure 60(b)(4), a movant may attack the judgment for lack of jurisdiction over the person at any time since a judgment rendered without

---

[3]The Defendants are collectively referred to as "Azteca" throughout the Opinion, unless reference to Sanchez as an individual is necessary.

jurisdiction over the person is void." *Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005) (cleaned up).[4] In determining whether service was accomplished, "[a] signed return of service constitutes prima facie evidence" that service was properly effectuated. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (cleaned up). If the plaintiff provides a signed return of service, then the defendant must present "strong and convincing evidence," *id.*, showing that "service was not received," *Homer*, 415 F.3d at 752.[5]

Here, Vargas presents ample evidence that at the very least makes a *prima facie* showing that Azteca was properly served. Along with two signed affidavits of service included in the original motion for default judgment, Mot. for Default Judgment, Exh. C, Affidavits of Service, Vargas obtained *another* affidavit from the special process server to rebut Azteca's motion, Pl. Sur-Reply, Exh. 2, Pluss Aff. There, the special process server affirms that she served Sanchez in November 2014, both for himself individually and Azteca Bakery. *Id.* ¶¶ 4, 7. She even includes pictures of Sanchez's house from each date of service. *Id.*, Exh. B; *id.*, Exh. F.[6] And those initial affidavits are accorded special significance—they are not hindsight

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[5]If Azteca had moved for an evidentiary hearing, then live-witness testimony would have been evaluated by the Court, along with all the circumstances. But no one sought an evidentiary hearing, so the record evidence is based on the affidavits and exhibits—which overwhelmingly favor Vargas.

[6]The photos also each include the same home and car, which, according to the special process server, is registered to Azteca Bakery. Pluss Aff. ¶¶ 5, 8. Although the photos first were filed as exhibits to Vargas's sur-reply, the Defendants did not ask for a further response to try rebutting the photos.

musings, but hard evidence of service presented at the time of the original judgment. What's more, Vargas's former attorney, Raisa Alicea, avers that she spoke with Sanchez about a possible settlement, and Sanchez even mentioned that he had been in settlement discussions with the Labor Department as well. Pl. Sur-Reply, Exh. 3, Alicea Aff. ¶¶ 4-5.

In the face of Vargas's substantial evidence, Azteca offers Sanchez's averment that he was not served at his house on the asserted dates of service. Sanchez Dec. ¶¶ 23-24. But those bare denials do not overcome the detailed affidavits of the process server, which initially included physical descriptions of Sanchez, R. 8, 9, and now also include photographs of his house and car, Pluss. Aff., Exhs. B, F. Indeed, the presence of the car in both photographs tends to show that he was home when the process server took the photos. Sanchez offers nothing in the way of evidence, beyond his denials, that he was not at home on those dates and times.

Sanchez also contends that he had no contact with Vargas's former attorney about settling the claims. Sanchez Dec. ¶¶ 25, 28. Again, however, the evidence readily supports Alicea's version. Back on December 16, 2014, Alicea filed an initial status report just as the case was starting out, but *after* the November 2014 service dates. R. 6, 1/27/15 Status Report. The initial status report recounted the contact with the Defendants:

> Defendants have not answered Plaintiff's Complaint at this time. However, *Defendants contacted Plaintiff's counsel to engage in settlement discussions due to a prior settlement agreement between Defendants and the Department of Labor.* Therefore, Plaintiff would like to not set any future discovery deadlines at this time.

*Id.* at 2 (emphasis added). This report confirms that Alicea *did* speak with Sanchez about settling the case, and also supports the process server's account that service of process was accomplished, because that is what prompted Sanchez to contact Alicea. Alicea reported this contact with the Defendants well before any dispute over service of process arose, which enhances the credibility of the information. The Court credits Alicea and the process server: service was properly effectuated. Azteca has not rebutted Vargas's *prima facie* presumption of service "merely by offering affidavits that conclusorily deny that service was effected." *Peralta v. El Tiburon, Inc.*, 252 F. Supp. 3d 658, 661 (N.D. Ill. 2017). The challenge to the judgment under Rule 60(b)(4) for lack of service is rejected.

### C. Excusable Neglect

Azteca's second argument for vacating the judgment is that there are good reasons why no answer was filed. Presumably, Azteca is invoking Federal Rule of Civil Procedure 60(b)(1), which authorizes vacatur when there is "excusable neglect." Under Rule 60(b)(1), the moving party must show "(1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint." *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994) (cleaned up). Rule 60(b)(1) sets a relatively high standard for the moving party; it "requires something more compelling than ordinary lapses of diligence or simple neglect." *Id.*

Azteca contends that it meets Rule 60(b)(1)'s good cause requirement because it did not know about the default judgment until Vargas sought the citation to discover assets. Def. Reply at 7-8. But a "willful disregard of [its] obligations as a

litigant" does not amount to good cause. *Jones*, 39 F.3d at 164. Here, Sanchez asserts that he was never served with the complaint, Def. Reply at 7-8, but this argument fails for the same reasons already discussed—presumption of service or not, the record evidence shows that service was accomplished. Instead, Azteca (through Sanchez) knew about Vargas's claims and simply neglected to file an answer.[7] That is not good cause as required by Rule 60(b)(1).

Azteca runs into similar problems with Rule 60(b)(1)'s second requirement, that the moving party must act quickly to correct the default. Indeed, a Rule 60(b)(1) motion must be made "no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). That deadline was not met here: the default judgment was entered in March 2015 and Azteca did not attempt to vacate it until April 2018. It is true that Vargas did not attempt to collect on the judgment for almost three years,[8] but Rule 60(c)(1) sets the outer limit for a Rule 60(b)(1) motion at one year.

In any event, Azteca also fails to show it has a meritorious defense to Vargas's claims. At a minimum, a meritorious defense must "raise[] a serious question regarding the propriety of a default judgment and [be] supported by a developed legal

---

[7]Azteca also points out that it was never served for the default judgment itself, supposedly supporting the notion that it had no reason to know the default judgment. Def. Reply at 8. But Federal Rule of Civil Procedure 5(a)(2) excuses service when a judgment is entered due to a failure to appear, as is the case here. In other words, Vargas was not obligated to serve Azteca with the default judgment.

[8]Although Vargas never explains why he waited three years before seeking the Citation, he is well within the default judgment's seven-year lifespan. 735 ILCS 5/12-108; *see* Fed. R. Civ. P. 69(a)(1); *see also Boim v. Quranic Literacy Inst.,* 2017 WL 2179457, at *2 (N.D. Ill. May 18, 2017). And even if Vargas had waited more than seven years, he still could have revived the default judgment, as long as he did so within 20 years of the judgment's entry. 735 ILCS 5/2-1602(a).

and factual basis." *Jones*, 39 F.3d at 165. Here, Azteca first argues that Vargas's inclusion in the Labor Department Agreement prevents him from seeking compensation through a separate lawsuit, because doing so would lead to an unjust double-recovery. Def. Reply at 11-12. But Azteca's argument ignores the plain language of the Fair Labor Standards Act, which of course was the statutory basis for the Labor Department Agreement. R. 22, Mot. to Quash, Exh. 1, DOL Agreement at 1. Employees only waive FLSA claims when they agree to accept settlement payments and there has been payment in full.[9] 29 U.S.C. § 216(c).

Here, Azteca cannot show that Vargas agreed to participate in the Labor Department Agreement. Entering an "agreement" under the FLSA requires more than merely accepting money; employees must also explicitly consent to waiving their claims against the employer. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305 (7th Cir. 1986) ("United treats 'agreement' as any act by which an employee accepts money. The difficulty with this construction is that it removes 'agreement' from § 16(c), treating the statute as if 'payment in full' were itself sufficient to abrogate the employee's right to sue."); *Pfefferkorn v. Primesource Health Grp., LLC*, 2018 WL 828001, at *12 (N.D. Ill. Feb. 12, 2018) (holding that an employee's waiver of FLSA claims must be "informed and meaningful.") (cleaned up).

---

[9] Vargas has yet to receive the full $6,171.68 that the Labor Department Agreement promises, DOL Agreement, Attach. A, Summary of Unpaid Wages at 1, because the first and only Labor Department check that he received was for only $4,156.64. Vargas Aff., Exh. A, Check. Employees are paid in full once they receive the full amount allotted under the Agreement. *See Walton v. United Consumers Club, Inc.*, 786 F.2d at 305. In any event, Vargas clearly did not agree to participate in the Agreement in the first place.

In this case, Vargas never signed a form which stipulated that, by accepting money from the DOL Agreement, he forfeited his individual claims against Azteca. On the contrary, the Agreement directly states, "[N]othing in this Agreement shall be deemed to increase, diminish or affect … the rights of any employee who chooses not to participate in the back wage distribution under this Agreement." DOL Agreement at 7. The fact that Vargas still has the original *uncashed* check from the Labor Department clearly demonstrates that he chose not to participate in the Agreement.[10] Vargas Aff. ¶¶ 14-15. So Vargas did not waive his FLSA claims against Azteca.[11]

Azteca's final contention is that Vargas exaggerated the overtime wages he was owed, unjustly inflating the default judgment. Azteca presents timecards, which purportedly show that Vargas only worked 50-60 hours per week. Sanchez Dec., Exh. 1, Timecards; Def. Reply at 3. That would be less than the 72-84 hours per week that Vargas claimed. *See* Mot. for Default Judgment, Calculation of Overtime Hours. But the timecards do not help Azteca establish a meritorious defense. First, they do not

---

[10]It is unclear why Azteca never undertook the basic step of checking with the Labor Department to determine whether Vargas had deposited the check *before* filing the motion to quash the citation. Only after the motion was fully briefed (including a sur-reply), did Azteca try to subpoena the Labor Department. That was too late, especially in light of the fact that, as described earlier in the Opinion, Azteca's opening motion did not contain a developed argument at all. So Azteca's motion to continue, R. 36, is denied and Vargas's motion to quash the subpoena, R. 40, is granted.

[11]Vargas likely could have cashed or deposited the DOL's check and still maintained his right to sue Azteca since, again, he never signed a form that explicitly precluded future lawsuits to recover the full amount of the unpaid wages. *Walton*, 786 F.2d at 307 ("The Department of Labor did not send out form agreements in this case or ask the employees to surrender any rights. … The employees' cashing of the checks they received therefore did not release their full claims against United.").

come close to covering the entire time that Vargas worked for Azteca. Azteca admits that Vargas worked there from late September 2011 to September 2014. Sanchez Dec. ¶ 4. Yet the timecards start in January 2011 and end in October 2011. *Id.*, Exh. 1, Timecards; *see also* Pl. Sur-Reply ¶¶ 9-10. So the timecards only cover two months out of three years that Vargas worked.

Worse, several of the timecards actually support Vargas's contention that he typically worked 72-84 hours in a week. Sanchez Dec., Ex. 1, Timecards; *see* Pl. Sur-Reply ¶ 11. Citing the timecards, Sanchez asserts in his declaration (under penalty of perjury) that Vargas only worked between 50 and 60 hours per week at Azteca— and that he never worked 72-84 hours a week. Sanchez Dec. ¶¶ 8-9. Yet the timecards *attached to the declaration* show several weeks that exceed 60 hours of work, including at least one week of 79 hours. *See id.*, Ex. 1, Timecards; Pl. Sur-Reply ¶ 11. This is an outright contradiction of Sanchez's declaration under oath. All in all, the timecards help Vargas's argument more than Azteca's, and do not come close to qualifying as a meritorious defense. Rule 60(b)(1) provides no basis to vacate the default judgment.

### III. Conclusion

For the reasons discussed, neither Rule 60(b)(4) nor Rule 60(b)(1) warrant vacatur of the default judgment. The citation is enforceable against both Defendants. The response to the citation is due by November 26, 2018, and the parties shall

arrange for a citation examination at Plaintiff's counsel's offices by December 17, 2018.

ENTERED:

<u>    s/Edmond E. Chang    </u>
Honorable Edmond E. Chang
United States District Judge

DATE: November 5, 2018